UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                         :
BERNARD B. IDLISAN,                                      :
                                                         :                12 Civ. 9163 (PAE)
                                        Plaintiff,       :
                                                         :                OPINION & ORDER
                    -v-                                  :
                                                         :
NEW YORK CITY HEALTH AND HOSPITALS                       :
CORPORATION,                                             :
                                                         :
                                        Defendant.       :
                                                         :
---------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Bernard B. Idlisan ("Idlisan") sues the New York City Health and Hospitals

Corporation ("HHC"), alleging that HHC violated the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12112 *et seq.*, when it failed to hire him for 12 clerical associate positions at seven

facilities in New York City.[1]   HHC moves to dismiss under Federal Rule of Civil Procedure

---

[1] The allegations Idlisan makes here are similar to those he makes in five other employment
discrimination cases he has brought in federal court since December 2012.  *See Idlisan v. North
Shore Long Island Jewish Health Sys. Inc.*, No. 13 Civ. 2345 (SJF) (GRB) (E.D.N.Y. filed April
9, 2013) (alleging discrimination under Title VII and the ADA for failure to hire for six
positions); *Idlisan v. Cornell Univ. Weill Med. Coll.*, No. 13 Civ. 1556 (WHP) (S.D.N.Y. filed
March 5, 2013) (alleging discrimination under Title VII and the ADA for failure to hire for five
positions); *Idlisan v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8935 (PAC) (RLE) (S.D.N.Y. filed
Dec. 6, 2012) (alleging discrimination under Title VII and the ADA for failure to hire for eight
positions); *Idlisan v. N.Y.S. Dep't of Taxation & Fin.*, No. 12 Civ. 1787 (N.D.N.Y. filed Dec. 5,
2012) (alleging discrimination under the ADA for failure to hire for five positions); *Idlisan v.
SUNY Upstate Med. Univ.*, No. 12 Civ. 1790 (N.D.N.Y. filed Dec. 5, 2012) (alleging
discrimination under the ADA for failure to hire for 34 positions).  In two of these suits, *Idlisan
v. Cornell University Weill Medical College* and *Idlisan v. Mount Sinai Medical Center*, Idlisan
also alleges he was not hired because of his criminal record:  He was convicted of second-degree
grand larceny and second-degree bail jumping in 2007 and was incarcerated between April 2007
and May 2009.  *See Idlisan v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8935, Dkt. 2 at pp. 43–44.

12(b)(6), for failure to state a claim.  For the reasons that follow, HHC's motion to dismiss is
granted.

## I.      Background

### A.  Facts[2]

Between August 13, 2011 and December 23, 2011, Idlisan applied for 12 clerical
associate positions at seven health care facilities or services within HHC's hospital system:

- On August 13, 2011, Idlisan applied for three clerical positions at Elmhurst Hospital
  in Queens and one clerical position at Coney Island Hospital in Brooklyn.

- On October 30, 2011, Idlisan applied for a clerical position at North Bronx Hospital.

- On November 12, 2011, Idlisan applied for a clerical position at Queens Hospital
  Center.

- On November 16, 2011, Idlisan applied for a clerical position at Health and Home
  Care, which offers patients in-home care.

- On November 17, 2011, Idlisan applied for two clerical positions—one at Queens
  Hospital Center and one at Bellevue Hospital Center in Manhattan.

---

[2] The Court's account of the underlying facts is drawn from the Complaint (Dkt. 2), and three
exhibits attached to the Declaration of Shawn Matthew Clark in Support of Defendants' Motion
to Dismiss ("Clark Decl.") (Dkt. 19):  (1) job descriptions for the 12 clerical associate positions
applied to by Idlisan; (2) Idlisan's three verified complaints filed with the New York State
Division of Human Rights; and (3) the three decisions issued by the New York State Division of
Human Rights associated with those three complaints.  Because Idlisan knew of these documents
and relied on them in bringing suit, the Court may consider all three exhibits on this motion.  *See
Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (court may consider
documents plaintiffs either had in their possession or knew of and relied upon in bringing suit)
(citation omitted).  Idlisan does not dispute the propriety of considering these documents; indeed,
he includes one complaint and one State Division of Human Rights decision within his
Complaint.

- On November 22, 2011, and December 20, 2011, Idlisan applied for two clerical positions at Coney Island Hospital in Brooklyn.

- On December 23, 2011, Idlisan applied for one clerical position at Lincoln Medical and Mental Health Center in the Bronx.

Compl. at 5, 9, 28–31.[3]

To apply for these positions, Idlisan registered on the HHC employment website, *see* Compl. at 28–31, and uploaded a resume and a cover letter with a personalized address block for each vacant position, *see* Compl. at 13, 15–16, 18–19, 46. Idlisan received at least nine automatically generated emails, confirming the receipt of his application, *see* Compl. at 14, 17, 20–27, as well as access to a personalized webpage on HHC's employment website showing the status of his applications (noting status as "applied"), *see* Compl. at 28–31.

The clerical associate positions Idlisan applied for had various duties, including contacting patients, evaluating claims, processing certifications for the federal WIC (Women, Infants and Children) program, investigating Medicaid coverage denials, and performing other clerical tasks. *See* Clark Decl. Ex. 1. Eleven positions—all but the Health and Home Care position—had three minimum qualifications: (1) a four-year high school diploma or its approved equivalent, (2) 18 months of full-time satisfactory clerical experience, and (3) the ability to type accurately on a personal computer at a minimum speed of 100 keystrokes (or 20 words) per minute. *Id.* The Health and Home Care position required only a high school diploma or its equivalent and 18 months of clerical experience. *Id.* In addition to these common requirements, five of the 12 positions required fluency in Spanish, three others stated a preference for bilingual speakers (specifically Spanish and Urdu), and four were silent as to language skills. *Id.*

---

[3] For ease of reference, the Court will refer to the Complaint by the page numbers designated in the electronic case filing (ECF) system.

Idlisan's resume included nearly seven years of bookkeeping experience in New York, as well as eight years of experience maintaining medical records at a hospital in the Philippines. *See* Compl. at 46.  Idlisan also asserts that he had obtained a bachelor's degree from a foreign institution.  Compl. at 6–7.  In his cover letters, Idlisan stated that "[p]ursuant to Section 55-A, [he was] qualified to apply [for] civil service positions" and had "recently passed the Civil Service exams for Beginning Clerical Worker and Eligibility Specialist with general ratings of 90.0% and 72.5%, respectively."[4]  *Id.* at 13.  Idlisan's cover letters also disclosed that he had been "diagnosed with severe triple vessel heart disease which [] has made me a disabled person." *Id*.  Idlisan did not mention any foreign language ability in his application.  *Id.*

HHC received a total of 6,544 applications for the 12 positions to which Idlisan applied, ranging from "as few as 396 applications for [Lincoln Medical and Mental Health Center in the Bronx] to as many as 833 applications for [Coney Island Hospital in Brooklyn]."  Compl. at 35.

Idlisan was not selected for any of the positions to which he applied.  *See id.* at 2–3.

On March 5, 2012, Idlisan filed three verified complaints with the New York State Division of Human Rights, alleging that HHC failed to hire him because of his heart disease disability, in violation of the ADA and New York State Human Rights Law, Art. 15, Sec. 296. *See* Compl. at 5, 8; *see also* Clark Decl. Ex. 2.  In a letter dated March 6, 2012, the New York State Division of Human Rights confirmed that Idlisan's complaints had been received and

---

[4] The 55-a program is a New York state program that sets aside a number of municipal civil service positions for physically or mentally disabled persons who are found qualified.  *See* N.Y. Civ. Serv. Law § 55-a (McKinney).  Because HHC is not a municipal agency (it is a public benefit corporation), the program is not applicable here.  Similarly, one of the two civil service exams Idlisan references ("beginning clerical worker") was an exam designated for state employees.  The other exam ("eligibility specialist") is not among those considered when hiring or promoting HHC employees.  *See* Compl. 35–36.

would be forwarded to the U.S. Equal Employment Opportunity Commission ("EEOC").

Compl. at 32.

On August 22, 2012, August 24, 2012, and August 30, 2012, the State Division of

Human Rights issued three letters stating that there was "no probable cause" to believe HHC had

engaged in unlawful discriminatory hiring. *Id.* at 42; *see* Clark Decl. Ex. 3. Specifically, the

letters noted that there was "insufficient evidence" HHC had discriminated against Idlisan in the

hiring process. *See* Compl. at 42; *see also* Clark Decl. Ex. 3.

On September 20, 2012, the EEOC adopted the findings of the State Division of Human

Rights and issued Idlisan a "right to sue letter." Compl. at 45.

### B.    Procedural History

On December 14, 2012, Idlisan filed a complaint against HHC, asserting that HHC's

failure to hire him for 12 associate clerical positions constituted discrimination under the ADA.

Dkt. 2. On June 14, 2013, HHC filed a motion to dismiss, Dkt. 14, a supporting memorandum of

law ("HHC Br."), Dkt. 17, and the accompanying Declaration of Shawn Matthew Clark ("Clark

Decl."), Dkt. 19.[5] On June 27, 2013, Idlisan filed an affirmation in opposition with an

accompanying memorandum of law ("Idlisan Br."). Dkt. 22. On August 9, 2013, HHC filed its

reply ("HHC Reply Br."). Dkt. 23.[6]

In its motion to dismiss, HHC attached a notice required by Local Rule Civil Rule 12.1

for the Southern District of New York, informing Idlisan that the Court could choose to convert

its motion into one for summary judgment, and grant summary judgment in favor of HHC. In

---

[5] On June 17, 2013, Idlisan filed an affidavit requesting default entry against HHC for missing a
filing deadline. Dkt. 20. Because HHC did not miss the deadline, this request is denied.

[6] On August 19, 2013, Idlisan filed an affirmation in opposition to the defendant's reply brief,
claiming that it should not be considered because it was filed without the court's permission.
Dkt. 25. In light of the Court's decision, this request is moot.

his response, Idlisan asked the Court "to decide [] this case without trial," but his brief focused

on defending against a motion to dismiss. *See* Idlisan Br. at 5–6.  Because Idlisan is *pro se*, the

Court declines at this stage to convert HHC's motion into one for summary judgment.

      For the reasons that follow, the Court grants HHC's motion to dismiss.

## II.    Applicable Legal Standards

      To survive a motion to dismiss under Rule 12(b)(6), a Complaint must allege facts that,

accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it

stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting

*Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

      A complaint is not required to provide "detailed factual allegations," but it must assert

"more than labels and conclusions" and more than "a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S at 555.  The facts pled "must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint are

true." *Id.* (internal citations omitted).  The Court must accept all factual allegations in the

complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192

F.3d 52, 56 (2d Cir. 1999).  Further, *pro se* pleadings must be read liberally and should be

interpreted "to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d

78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

Recently, the Second Circuit stated that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order). At a minimum, however, "employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a *prima facie* case is not required." *Id.* Although "a complaint need not establish a *prima facie* case of employment discrimination[, it] must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *4 (S.D.N.Y. Apr. 30, 2013) (quoting *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010)). "In the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012) (citing *Patane v. Clark*, 508 F.3d 106, 111–13 (2d Cir. 2007)).

**III.   Discussion**

The ADA prohibits discrimination against any "qualified individual on the basis of disability," including with respect to decisions to hire. 42 U.S.C. § 12112(a). A *prima facie* case of discrimination under the ADA requires showing that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA; (3) the plaintiff is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action *because of* his disability. *See Rios v. Dep't of Educ.*, 351 F. App'x 503, 505 (2d Cir. 2009) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)) (emphasis added). Although Idlisan is not required to establish a *prima facie* case of employment discrimination at the pleading stage, the

elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

Here, the first two prongs of the *prima facie* case are not in dispute. HHC concedes that it is subject to the ADA, and it "assum[es] without conceding" that Idlisan, who suffers from severe triple vessel heart disease, is disabled within the meaning of the ADA. HHC Br. 10. And for purposes of this motion, the Court assumes that Idlisan was qualified to perform the essential functions of the jobs to which he applied without reasonable accommodation.[7]

However, even reading the Complaint liberally to raise the strongest arguments they suggest, Idlisan has pled virtually no facts that give rise to an inference that HHC did not hire him *because of* his disability. As with claims brought under other employment discrimination statutes like Title VII or the ADEA, the "*sine qua non*" of an ADA discriminatory action claim "is that the discrimination must be 'because of' the employee's protected status." *Williams*, 2012 WL 4471544, at *2 (citing *Patane*, 508 F.3d at 112); *see id.* at *3 (dismissing plaintiff's Title VII

---

[7] However, as HHC asserts, there is a legitimate argument that Idlisan was not qualified to perform the essential functions for eight of the 12 jobs to which he applied. Five jobs required Spanish fluency, and three preferred bilingual ability in Spanish or Urdu. *See* Clark Decl. Ex. 1. Because these jobs all included a substantial amount of patient contact—such as scheduling appointments, evaluating eligibility for federal programs, and overseeing patient satisfaction initiatives—bilingual ability was, arguably, an essential requirement for these jobs. *Id.*

Idlisan's application materials did not indicate any foreign language ability. His resume and cover letters—his only contact with the hiring personnel—are silent as to any proficiency in foreign language. *See* Compl. at 13, 46. In fact, Idlisan only asserts the ability to "read, write, and speak Spanish in certain ways" in his response to HHC's motion to dismiss. Idlisan Br. at 10. To verify this claim, Idlisan attached his passing score on a Spanish language examination for a position as an "eligibility specialist" with Department of Citywide Administrative Services (DCAS). *See* Idlisan Br. at 24 (showing a score of 72.5%). However, none of the HHC hospitals to which Idlisan applied had the benefit of seeing this score, or of learning from Idlisan that he had Spanish language skills. Therefore, on the face of his application, Idlisan was, arguably, not qualified for eight of the 12 positions to which he applied.

failure-to-hire claim because plaintiff "recites no factual circumstances from which this Court

can infer a discriminatory motivation"); *Munoz-Nagel*, 2013 WL 1809772, at *6 (dismissing

plaintiff's ADA failure to hire claim because plaintiff "has failed to include any factual

allegations from which it can be inferred that Guess did not hire her because of her alleged

disability"); *Jiggetts v. Local 32BJ, SEIU*, No. 10 Civ. 9082 (DAB) (JCF), 2011 WL 4056312, at

*2 (S.D.N.Y. Aug. 10, 2011) (Report & Recommendation), *adopted by* No. 10 Civ. 9082 (DAB),

2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011) (recommending that motion to dismiss ADA

claims be granted because plaintiff failed "to allege a connection between his claimed disabilities

and any adverse employment action taken against him").

      Idlisan's Complaint does not plead a plausible nexus between his disability and HHC's

failure to hire him.  For instance, Idlisan does not allege that HHC gave non-disabled applicants

preferential treatment, or that any HHC employees made comments or took actions that could

give rise to an inference of discriminatory animus.  Rather, Idlisan expresses his own personal

belief, in a conclusory manner, that HHC's decision not to hire him was based on his disability.

Idlisan asserts he "personally believe[s] that the main reason why [he] was not hired was because

of [his] disability."  Compl. at 9.  Specifically, Idlisan asserts that HHC "denied" him the

positions "[d]ue to the severity of [his] medical condition," and that the HHC recruiter "simply

ignored" his applications.  *Id.* at 6.  Idlisan claims that HHC "was just scared to hire [him] and be

held responsible" if "something bad" happened to him on the job.  *Id.*

      But this is bald speculation.  Nothing in the Complaint itself supports an inference that

Idlisan's disability in any way motivated HHC's decision not to hire him for the 12 positions at

issue.  Idlisan simply fails to plead facts sufficient to "nudge [his] claims across the line from

conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Idlisan's allegations are vague, devoid of

any particularity; they do not come close to alleging a plausible case of employment discrimination. "They are, in fact, a paradigmatic example of an unadorned, the-defendant-unlawfully-harmed-me accusation that will not do." *Wilson v. N.Y. City Dep't of Corr.*, No. 11 Civ. 9157 (PAE), 2013 WL 922824, at \*4 (S.D.N.Y. Mar. 8, 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Because Idlisan's Complaint fails to state a claim, the motion to dismiss is granted.

## CONCLUSION

For the foregoing reasons, HHC's motion to dismiss is granted. The Clerk of Court is directed to terminate the motion at docket number 14, and to close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 15, 2013
       New York, New York